IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

GARRETT CONSTRUCTION, INC.                                              PLAINTIFF

VERSUS                                       CIVIL ACTION NO. 1:09cv379WJG-JMR

ASHBRITT, INC., and FEDERAL
INSURANCE COMPANY                                                      DEFENDANTS

O R D E R

THIS CAUSE is before the Court on motion [193] of the Defendant, Ashbritt, Inc. [Ashbritt], to dismiss [193] portions of the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6); and the joinder [194] by Federal Insurance Company [Federal] Ashbritt's motion to dismiss.

Ashbritt subcontracted with Garrett Construction, Inc., [Garrett], to perform debris removal following Hurricane Katrina. (Ct. R., Doc. 190, p. 2.) Part of the contract between the United States Army Corps of Engineers and Ashbritt required that Ashbritt furnish a payment bond to guarantee payment to first and second tier subcontractors for debris removal work performed. (*Id*.) Ashbritt obtained this bond from Federal. (*Id*.)

Garrett and Ashbritt entered the subcontract on October 10, 2005. (Ct. R., Doc. 180-2, p. 2.) The terms of that agreement provide that it be governed by the laws of the State of Florida. (Ct. R., Doc. 180-2, p. 14.) To summarize the claims advanced by Garrett, Ashbritt allegedly "negligently misrepresented that small Mississippi companies" when Randall Perkins, president of Ashbritt, told applicants that small Mississippi businesses and minority contractors would

receive first priority in debris removal jobs as these jobs materialized. (Ct. R., Doc. 190, pp. 2-3.) In addition, Garrett contends, among other things, that Ashbritt acted in bad faith in failing to pay retainage by the 91st day following the last day that work was performed; the alleged contract breaches were willful and wanton amounting to tortious conduct for which Garrett can recover punitive damages; and that Federal is jointly and severally liable with Ashbritt for the contract breaches. (*Id*., p. 4.) Garrett sued Ashbritt and Federal seeking damages for alleged breach of contract, tortious breach of contract; breach of duty of good faith and fair dealing; negligent misrepresentation; fraudulent and negligent inducement; loss of profits; and punitive damages. (Ct. R., Doc. 190, p. 4.)

Ashbritt claims that Florida law controls the dispute between the parties, and under Florida law, certain claims advanced by Garrett are precluded as a matter of law. (Ct. R., Doc. 193, p. 6.) The allegations of the Amended Complaint amount to claims of a contract breach between Garrett and Defendants, according to Ashbritt. (Ct. R., Doc. 180, p. 1.) Because Florida law controls the contract, Ashbritt maintains that any tort claim advanced by Garrett, including its claim for punitive damages, must fail as a matter of law. (*Id*.) Florida's economic loss doctrine prevents Garrett from bringing a cause of action for fraud in the inducement or negligent misrepresentation where the allegations of such action are intertwined with the subject matter and performance of the contract itself. (Ct. R., Doc. 193, p. 7.)

Ashbritt contends that the contract encompasses the scope of the work and does not provide a guarantee of a particular amount of work. (*Id*., p. 9.) In addition, any claim of reliance on alleged pre-contractual promises or fraud or misrepresentation occurring before the formation of the parties' contract also fails as a matter of law, according to Ashbritt. (*Id*., pp. 10-11.)

Ashbritt further contends that the parol evidence rule prohibits the introduction of evidence of a verbal agreement or other extrinsic evidence which would vary the terms of a valid written contract. (*Id.*) Additionally, Ashbritt advances that all negotiations and conversations which precede the making of a contract are presumed merged into the final written contract. (*Id.*, p. 12.)

Ashbritt maintains that punitive damages are not recoverable in this case either because the claims in this case are based on an alleged breach of contract, or because Garrett cannot establish that Ashbritt is guilty of intentional misconduct or gross negligence. (*Id.*, p. 16.) The conduct alleged in the complaint – that Ashbritt failed to pay Garrett the full amount due on the contract and that Garrett would get first priority in work assignments – is not the type of outrageous conduct which equates to criminal manslaughter, thereby giving rise to a claim for punitive damages. (*Id.*, p. 17.)

> The contract in this case provides in part as follows:
>
> This Agreement comprises the entire agreement between Contractor and Subcontractor relating to the Subcontract work covered hereby and no other agreement, representations or understanding concerning the same has been made and no oral statement, understandings or agreement shall affect the terms hereof. Further, nothing herein shall create any relationship of agency, employment contract, obligation or otherwise between Owner and Subcontractor.

(Ct. R., Doc. 180-2, p. 14, ¶ 18.2)

I.  <u>Choice of Law Provision</u>

A court sitting in diversity applies the conflict rules of the state in which the suit is brought and, therefore, Mississippi choice of law rules apply to this action. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). The terms of the contract provide as follows:

> This Agreement shall be construed and governed by the laws of the State of Florida, without giving effect to any choice or conflict of law provision or rule. Each of the parties irrevocably consents to the non-exclusive jurisdiction of the

> courts of the state of Florida located in Broward County, and of the United States District Court for the Southern District of Florida for the purposes of any suit, action, or proceeding relating to or arising out of this Agreement (a "Related Proceeding") and irrevocably waives, to the fullest extent it may effectively do so, (I) any objection it may have to the laying of venue of any related Proceeding in any such court, and (ii) the defense of any inconvenient forum to the maintenance of any related Proceeding in any such court.

(Ct. R., Doc. 180-2, p. 14, ¶ 18.4.)

Under Mississippi law, parties to a contract may control the substantive law applicable to the contract, so long as that state law bears a reasonable relation to the transaction. *Sorrels Steel Co., v. Great Sw. Corp.*, 906 F.2d 158, 167-8 (5th Cir. 1990). In this case, Florida is the location of Ashbritt's main office and principal place of business and the Court finds that this constitutes a reasonable basis for the selection of Florida law to apply to the contract. *Kiefer v. Harris*, 125 F.3d 852 (5th Cir. 1997). The Court will uphold the choice of law provision within the contract and apply Florida law to the contract.

II.     Tort and Punitive Damage Claims

Garrett contends that it is entitled to damages due to alleged bad faith on the part of Ashbritt by failing to pay retainage by the 91st day after work was performed, fraudulent inducement by Ashbritt causing Garrett to spend large sums of money when Ashbritt never intended to give Garrett first priority in the work, negligent misrepresentations that Garrett would receive first priority, and willful and wanton breach of contract allowing for a punitive damage claim. (Ct. R., Doc. 190, p. 4.)

Under the economic loss doctrine, parties in contractual privity are prohibited from asserting tort claims for recovery of pure economic damages, with exceptions. *HTP, LTD v. Lieas Aereas Costaricenses, S.A.*, 685 So.2d 1238, 1239 (Fla. 1996). Claims of fraudulent

inducement and negligent misrepresentation can qualify for this exception if the claimed fraud is extraneous to the contract; however, if the fraud relates to the performance of the contract, the economic loss rule applies and bars the claim. *S&B Investments, LLC v. Motiva Enterprises*, LLC, 2004 WL 3250306 *3 (S.D. Fla. 2004).

The allegations of the Amended Complaint contend that in an October 2005 meeting, Perkins promised Socrates Garrett, the owner of Garrett, that Ashbritt would give "first priority" to small Mississippi businesses and minority contractors. (Ct. R, Doc. 190, p. 2.) Garrett contends that based on that representation, Garrett made a substantial investment in equipment and personnel to perform the contract. (*Id*.) Garrett contends that Ashbritt breached its agreement to give Mississippi businesses and minority contractors "first priority". (*Id*., p. 3.) Garrett claims that it relied to its detriment on the statement and was fraudulently induced to make a large investment in equipment and incurred expenses for men and material to perform the contract. (*Id*.) Garrett contends that had it been given first priority, as promised, and given the fact that it had the capacity to haul 5,000 yards per day, it would have made substantially more money in fulfilling the contract than it did. (*Id*.) Garret claims that it lost gross profits of $3.5 million dollars. (*Id*.) Garrett also contends that Ashbritt did not pay the final 10% retainage to Garrett which constitutes a material breach of contract. (*Id*., p. 4)

Although a fraud in the inducement claim is sometimes not barred by the economic loss rule, to survive, the claim must be based on conduct which is separate and distinct from the conduct constituting the breach of contract. *Hotels of Key Largo, Inc. v. RHI Hotels, Inc.,* 694 So.2d 74, 77 (Fla. Dist. Ct. App. 1997). Each of the allegedly fraudulent representations which induced Garrett to enter the contract are foreclosed by the contract, which contains a merger

clause that explicitly and unambiguously supercedes all prior verbal and written agreements. *Ben-Yishay v. Mastercraft Devel., LLC*, 553 F. Supp.2d 1360, 1370 (S.D. Fla. 2008).

When the language of a contract is clear and unambiguous, the intent or meaning of a written document is determined solely from the language of the instrument. *Reid v. Barry*, 93 Fla, 849, 112 So. 846 (1927). The parol evidence rule prohibits a party to a contract from varying terms of that contract by alleging that oral agreements were made which differ from the written terms of the contract. *Carlton, Inc. v. Southland Diversified Co.*, 381 So.2d 291, 293 (Fla. Dist. Ct. App. 1980). In addition, under Florida law, the doctrine of merger prevents the introduction of evidence of conversations and negotiations which take place before the contract is entered into by the parties and are presumed to be merged in the final terms of a written contract. *Monumental Life Ins. v. Commonwealth Land Title Ins. Co.*, 435 So.2d 975 (Fla. Dist. Ct. App. 1983). Unfortunately for Garrett, nothing in its claims for fraudulent inducement or negligent misrepresentation are extraneous to the contract and the merger clause restricts reliance on prior representations. Therefore, the Court finds that the motion to dismiss these claims should be granted.

III.     <u>Punitive Damage Claim</u>

There must be a showing of some intentional wrong, insult, abuse or gross negligence which amounts to an independent tort to justify recovery in a claim for punitive damages. Furthermore, under Florida law, a plaintiff must provide the court with an evidentiary basis for punitive damages before a court may allow a claim for punitive damages to be included in a plaintiff's complaint. *Cypress Aviation, Inc. v. Bollea*, 826 So.2d 1091, 1092 (Fla. Dist. Ct. App. 2002); *Espirito Santo Bank v. Rego*, 990 So.2d 1088, 1091 (Fla. Dist. Ct. App. 2007). There is

no evidence in the record to support a claim of punitive damages in this case, especially in light of the dismissal of any claims of alleged fraud in connection with the contract. The Court, therefore, concludes that the motion to dismiss the punitive damages claim should be granted. Accordingly, the Court finds that any claim of bad faith, fraudulent inducement, negligent misrepresentation and for punitive damages should be dismissed. It is, therefore,

ORDERED AND ADJUDGED that the motion [193] of Defendant Ashbritt to dismiss portions of Plaintiff's complaint including its claims for bad faith, fraudulent inducement, negligent misrepresentation and punitive damages, and the joinder [194] thereto of Defendant Federal, be, and are hereby, granted. It is further,

ORDERED AND ADJUDGED that each party bear its respective costs associated with these motions.

SO ORDERED AND ADJUDGED, this the 16th day of February, 2010.

*Walter J. Gex III*
UNITED STATES SENIOR DISTRICT JUDGE